# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ROSHAJA HARVEY,<br><br>Defendant. | Case No. 95cr2095 - IEG<br><br>**ORDER** |

## BACKGROUND

Defendant Roshaja Harvey served approximately ten years in prison for armed bank robbery. Afterwards, he began a five year term of supervised release. Among the mandatory conditions of his supervised release, Harvey was ordered to "[r]efrain from any unlawful use of a controlled substance." In January 2011, Harvey tested positive for marijuana use and acknowledged having used marijuana. Soon after, U.S. Probation formally alleged Harvey had violated the conditions of his supervised release. [Doc. No. 78.]

Harvey moved to dismiss the allegation. [Doc. No. 87.] The Court held a hearing on June 15, 2011. Harvey made two arguments. First, Harvey argued he lacked adequate notice of the mandatory condition because it was vague. Second, Harvey argued his use of marijuana pursuant to a "doctor's recommendation" was lawful under both California and federal law.

///
///
///

At the conclusion of the hearing, the Court concluded that Harvey violated the above-mentioned mandatory condition.[1] This Order explains the Court's rationale for reaching that conclusion.

**DISCUSSION**

**1.      Notice**

Under federal law, courts must impose certain mandatory conditions when imposing a term of supervised release after imprisonment. See 18 U.S.C. § 3583(d). In addition to other mandatory conditions, "[t]he court shall also order, as an explicit condition of supervised release, that the defendant refrain from any unlawful use of a controlled substance . . . ." Id. (emphasis added). Accordingly, this Court imposed a condition that Harvey "[r]efrain from any unlawful use of a controlled substance." [Doc. No. 53 (emphasis added).]

For the first time at the June 15, 2011 hearing, Harvey's counsel argued that Harvey lacked adequate notice of this condition. Harvey lacked adequate notice, counsel argued, because Harvey was using marijuana for medical purposes in compliance with state law, because Harvey believed he was acting lawfully, and because the phrase "any unlawful use" is vague.

The phrase "any unlawful use" is not vague, and it encompasses unlawful use under federal law. That Harvey believed he was acting in compliance with state law, or any other law, does not deprive him of notice of the condition. Cf. United States v. Stacey, 734 F. Supp. 2d 1074, 1084 (S.D. Cal. 2010) (precluding defendant from presenting a "medical marijuana" defense notwithstanding defendant's "ignorance of federal law"). At any rate, Harvey's argument lacks credibility; he used marijuana despite his own attorney's advisement that "he could not do that" while under federal supervision. [Gov't Resp. in Opp'n, Ex. 4.] The next section evaluates whether the advisement that Harvey "could not do that" was correct.

///

---

[1] Another mandatory condition of Harvey's supervised release provided that he "[n]ot commit another federal, state, or local crime." In October 2010, U.S. Probation alleged Harvey violated this condition by committing a battery on his then ex-wife in violation of California Penal Code § 243(E)(1). At the conclusion of the June 15, 2011 hearing, the Court found Harvey in violation of this allegation as well. In September 2010, Harvey spit on and pushed his then ex-wife.

### 2. Lawfulness of Harvey's Conduct

The Controlled Substances Act ("CSA") established "a comprehensive framework for regulating the production, distribution, and possession of five classes of 'controlled substances.'" Gonzales v. Raich, 545 U.S. 1, 24 (2005). The CSA places controlled substances into one of five "Schedules" based on whether a given substance presents the potential for abuse, whether abuse of the substance may lead to psychological or physical dependence, and whether the substance has currently accepted medical uses within the United States. See 21 U.S.C. § 812(b). The provision at issue in this case is 21 U.S.C. § 844(a), which provides in relevant part:

> It shall be unlawful for any person knowingly or intentionally to possess a controlled substance <u>unless</u> such substance was obtained directly, or <u>pursuant to a valid prescription or order</u>, from a practitioner, while acting in the course of his professional practice . . . .

Id. (emphasis added).

Having obtained and used marijuana pursuant to a "doctor's recommendation," Harvey maintains that any alleged possession and use of marijuana took place pursuant to a "valid prescription or order." The Government responds that marijuana is a Schedule I drug and cannot be validly prescribed. The parties' dispute thus boils down to a single issue: whether a practitioner may order or prescribe the use of marijuana under section 844(a), which does not explicitly differentiate among drug schedules.

The Court begins with the language of the Controlled Substances Act ("CSA"). Congress has designated marijuana as a Schedule I drug. 21 U.S.C. § 812(c). The provision entitled "Prescriptions" sets forth rules for prescribing drugs under Schedules II, III, IV, and V, but makes no mention of Schedule I controlled substances. 21 U.S.C. § 829. That makes sense, as the Government points out, because the CSA defines a Schedule I controlled substance as a substance for which there is "no currently accepted medical use in treatment" and a "lack of accepted safety for use . . . under medical supervision." 21 U.S.C. § 812(b)(1)(B)-(C). As a consequence, the CSA only contemplates the possession and use of Schedule I drugs in the context of a strictly controlled research project. 21 U.S.C. § 823(f). The language and provisions of the CSA suggest

3

the CSA does not permit practitioners to prescribe Schedule I drugs such as marijuana.

On at least three occasions, the Supreme Court has indicated the CSA prohibits practitioners from prescribing drugs listed in Schedule I. First, in <u>United States v. Oakland Cannabis Buyer's Cooperative</u>, 532 U.S. 483, 486 (2001), the Supreme Court held there could be no medical necessity exception to the provisions of the CSA. In doing so, the Court observed that "[w]hereas some other drugs can be dispensed and prescribed for medical use . . . the same is not true for marijuana." <u>Id.</u> at 491. The Court further noted that "[u]nlike drugs in other schedules . . . schedule I drugs cannot be dispensed under a prescription." <u>Id.</u> at 492 n.5. Next, in <u>Gonzales v. Raich</u>, 545 U.S. 1, 5 (2006), the Court held that Congress has the constitutional power to prohibit the local cultivation and use of marijuana, even in circumstances authorizing such cultivation and use under California law. In <u>Raich</u>, the Court observed that the CSA's "regulatory scheme is designed . . . to prohibit entirely the possession or use of substances listed in Schedule I, except as part of a strictly controlled research project." <u>Id.</u> at 24. And most recently, in <u>Gonzales v. Oregon</u>, 546 U.S. 243, 248-49 (2006), the Court held that the CSA did not permit the Attorney General to prohibit doctors from prescribing regulated drugs for use in physician-assisted suicide. Referring to its previous decision in <u>Oakland Cannabis</u>, the Court stated that "Congress' express determination that marijuana had no accepted medical use foreclosed any argument about statutory coverage of drugs available by a doctor's prescription." <u>Id.</u> at 269. In dissent, but consistent with the majority's statement, Justice Roberts wrote that "21 U.S.C. § 829 [] governs the dispensation of controlled substances other than those on Schedule I (which may not be dispensed at all)." <u>Id.</u> at 278 (Roberts, J., dissenting). The Supreme Court's analyses of the CSA reinforce the Court's conclusion that the CSA prohibits practitioners from prescribing marijuana. To the extent Harvey's "doctor's recommendation" purports to be a prescription—a dubious premise the Court need not evaluate—it is not a valid prescription.

In the alternative, Harvey argues that a "doctor's recommendation" is a valid order. Harvey's statutory analysis is not persuasive, and he has not cited any cases that support his position that the CSA allows doctors to order the use of Schedule I drugs while, at the same time,

4

preventing doctors from prescribing them. Nothing in the CSA or any case supports the notion that Congress intended "prescription" and "order" to have fundamentally contradictory meanings within the same sentence of section 844(a). Accordingly, the Court declines Harvey's invitation to construe the CSA as permitting practitioners to order the use of Schedule I drugs such as marijuana.

## **CONCLUSION**

Harvey had adequate notice that using marijuana would violate the mandatory condition of his supervised release that he "[r]efrain from unlawful use of a controlled substance." Nonetheless, Harvey used marijuana. While such use may have been lawful under state law, it was unlawful under federal law.[2]

**IT IS SO ORDERED.**

**DATED: June 23, 2011**

*[signature]*
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**

---

[2] Consistent with this Court's conclusion, other courts in this circuit have held that marijuana use remains unlawful under federal law. See, e.g., United States v. Stacy, 2010 WL 4117276 at *5 ("California law does not purport to render the use of medical marijuana lawful under federal law."); United Stats v. Scarmazzo, 554 F. Supp. 2d 1102, 1105 (E.D. Cal. 2008) ("The use of medical marijuana remains unlawful.") (citation omitted); Conant v. McCaffrey, 172 F.R.D. 681, 685 (N.D. Cal. 1997) ("The First Amendment allows physicians to discuss and advocate medical marijuana, even though use of marijuana itself is illegal.").